UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BROADCAST MUSIC, INC., et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 13-cv-12212-IT |
| | * | |
| PJML, INC. and JOHN LOVETT, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 30, 2015

TALWANI, D.J.

I.   Introduction

This case involves claims that Defendants PJML, Inc. ("PJML") and John Lovett ("Lovett") vicariously infringed upon Plaintiffs' copyright interests in three musical works by allowing those works to be publicly performed at Archie's Little River Ale House ("Archie's"). Before the court is Plaintiffs' Motion for Summary Judgment [#16], which seeks a grant of summary judgment on all claims of infringement, a statutory damages award of $24,000, an award of costs and fees totaling $10,204.82, and injunctive relief.

As set forth below, Plaintiffs' motion for summary judgment is ALLOWED IN PART. Judgment shall enter against Defendants on all counts. The court awards the following relief: $2,250 in statutory damages, $4,470 in attorney's fees, and $544.50 in costs. The court denies Defendants' request for a permanent injunction.

II.   Procedural History

On September 6, 2013, Plaintiffs filed the complaint in this case, which includes three counts of copyright infringement. See Compl. [#1]. Defendant Lovett filed an answer *pro se,*

asserting that "Archie's Little River Alehouse has agreements with all performing musicians that they are to perform original music only." Answer [#11]. PJML did not answer the complaint.

On January 8, 2014, the parties filed a Joint Proposed Pre-Trial Scheduling Order [#13] (the "Joint Statement"). The Joint Statement asserted that "[c]ounsel for defendant PJML, Inc. shall be retained and have filed an appearance no later than January 22, 2014." No such appearance was filed.

Plaintiffs served written discovery on Defendants on June 17, 2014. See Decl. William S. Strong ¶ 1 [#18] [hereinafter Strong Decl.]. Plaintiffs received no response. Id. ¶¶ 2-3. On January 30, 2015, Plaintiffs filed their Motion for Summary Judgment [#16]. The motion is unopposed.

III.    Facts Deemed Admitted for Purposes of Summary Judgment[1]

Plaintiff Broadcast Music, Inc. ("Broadcast Music") acquires non-exclusive public performance rights in musical works, including the three musical works in question here. See Pls.' Statement Undisputed Facts ¶ 2 [#17] [hereinafter Pl.'s Facts]. The other Plaintiffs in this case are the copyright owners of those works. Id. The copyrights are valid and Plaintiffs have complied with all requirements of the Copyright Act. See Decl. Hope Lloyd ¶ 4 [#20] [hereinafter Lloyd Decl.]. Broadcast Music licenses the right to publicly perform musical works in which it holds an interest through "blanket license agreements." See Pls.' Facts ¶ 3.

At all times relevant to this case, PJML owned, operated, and had a financial interest in Archie's. See Strong Decl., Ex. 1 ¶¶ 1-2 [#18-1] [hereinafter Admissions]; see also Fed. R. Civ.

---

[1] In resolving a motion for summary judgment, "[m]aterial facts of record sets forth . . . by the moving party will be deemed for the purposes of the motion to be admitted by opposing parties unless controverted." Local Rule 56.1. Accordingly, properly supported facts set forth in Plaintiffs' concise statement of materials acts are deemed admitted as unopposed.

P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request [for admission] is directed serves . . . a written answer or objection . . . ."). During this time period, Lovett was Treasurer and Director of PJML. See Admissions ¶ 3. In 2013 Lovett also served as President of PJML. Id. Lovett had a financial interest in Archie's, had the right to control activities at the bar, and had the right to supervise its employees. Id. ¶¶ 4-5.

On the evening of April 23, 2011, Broadcast Music sent an investigator to determine if unlicensed musical works were being performed at Archie's. See Pl.'s Facts ¶ 12. The song "Bulletproof" by Eleanor Jackson and Benedict Langmald was performed that evening. Id. On March 23, 2013, Broadcast Music sent another investigator to Archie's. Id. The songs "Killing Floor" by Chester Burnett and "Help Me" by Sonny Boy Williamson and Ralph Bass were performed that evening. Id. Plaintiffs own the copyrights to these works, and Broadcast Music has acquired these works' public-performance rights. Id. Defendants did not have permission to allow the public performance of these works. Id.

IV.   Summary Judgment on Plaintiffs' Claims of Copyright Infringement

"The Copyright Act of 1976 gives a copyright owner the 'exclusive right' to 'perform the copyrighted work publicly.'" Am. Broad. Cos., Inc. v. Aereo, Inc., 134 S. Ct. 2498, 2503 (2014) (quoting 17 U.S.C. § 106(4)). To establish copyright infringement in a musical work, a plaintiff must show: "(1) the originality and authorship of the compositions involved; (2) compliance with all formalities required to secure a copyright under the Act; (3) plaintiffs' ownership of the copyrights at issue; (4) public performance of the songs; [and] (5) lack of authorization." Marvin Music Co. v. BHC Ltd. P'ship, 830 F. Supp. 651, 654 n.2 (D. Mass. 1993) (citations omitted).

As set forth above, the summary judgment record contains undisputed evidence that Plaintiffs own valid and enforceable copyrights in the three musical works at issue and that

Defendants allowed these songs to be publicly performed at Archie's without first purchasing a license for their use or otherwise gaining permission from the copyright holders.

"The entrepreneur who sponsors . . . a public performance for profit is also an infringer." Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 157 (1975); see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, 545 U.S. 913, 930 (2005).  Vicarious copyright infringement occurs when a defendant has both "the right and ability to supervise" the infringing activities and "an obvious and direct financial interest in the exploitation of copyrighted materials." Polygram Int'l Publ'g, Inc. v. Nevada/TIG, Inc., 855 F. Supp. 1314, 1324 (D. Mass. 1994) (quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 30 (2d Cir. 1963)); see also Broadcast Music, Inc. v. Meadowlake, Ltd., 754 F.3d 353, 354-55 (6th Cir. 2014).  Here, the summary judgment record includes undisputed facts that PJML owned and operated Archie's at the time the infringing performances occurred and that Lovett had control over activities at Archie's.  The unrebutted record evidence also shows that Defendants had a financial interest in Archie's.

Accordingly, judgment will enter against both Defendants on the three counts of infringement in this case.

V.      Remedy for Defendants' Infringement

   A.   *Statutory Damages Award*

The Copyright Act provides that a copyright owner may receive either actual or statutory damages for infringement. See 17 U.S.C. § 504(a)(1)-(2).  Statutory damages shall be "with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, . . . not less than $750 or more than $30,000 as the court considers just." Id. § 504(c)(1).  In cases of willful infringement, the maximum

statutory award increases to $150,000. Id. § 504(c)(2).[2]

Plaintiffs seek statutory damages in the amount of $24,000. See Pls.' Mem. Law Supp. Their Mot. Summ. J., 13 [#17] [hereinafter Pls.' Mem.]. Plaintiffs justify this request on the ground that, if Defendants had purchased a "blanket license agreement" for each year from April 2009 until April 2015, they would have spent more than $8,000. See id.; Decl. Brian Mullaney ¶ 16 [#19] [hereinafter Mullaney Decl.]. Plaintiffs further assert that "[c]ourts consistently have held that a statutory damages award between two and five or six times the amount that the plaintiff would have received in licensing fees is appropriate." Pls.' Mem. at 13. Therefore, Plaintiffs suggest that an award of $24,000 (approximately three times the total in alleged licensing fees) is warranted here. Id. at 12-13.

As Plaintiffs point out, some courts have crafted statutory awards by considering the total amount of licensing fees that would have been paid by an infringing defendant from the date of a plaintiff's first correspondence regarding the purchase of a license. See, e.g., EMI Mills Music, Inc. v. Empress Hotel, Inc., 470 F. Supp. 2d 67, 75-76 (D.P.R. 2006); Int'l Korwin Corp. v. Kowalczyk, 665 F. Supp. 652, 656 (N.D. Ill 1987), aff'd 855 F.2d 375 (7th Cir. 1988). It does not follow, however, that this is the only appropriate method of calculating a just statutory award. Moreover, on the facts of this case, the court finds such an approach unwarranted.

In determining a reasonable statutory damages award, the court begins by considering the

---

[2] The summary judgment record in this case does not establish that the infringement was willful. Although it is undisputed that Plaintiffs contacted Defendants and informed them that a license was required to play any musical work in which Broadcast Music held the public-performance rights, there is no evidence in the record that Plaintiffs identified which songs it had the right to license or that Defendants anticipated that their hired performers would violate Plaintiff's copyright. See Strong Decl., Ex. 2 [#18-2] (providing copies of the letters sent to Defendants, which do not provide information about the songs in which Broadcast Music owns an interest); cf. Answer [#11]. Accordingly, the court cannot say that Defendants understood and willfully disregarded Plaintiffs' copyright interest in these songs.

acts of infringement proven by the summary judgment record.  Here, those acts of infringement occurred on one evening in 2011 and one evening in 2013, and consisted of the performance of only three infringing songs over the course of the two evenings of music.  There are no facts in the record to show that on any nights other than April 23, 2011 and March 23, 2013, the performances at Archie's were of musical works in which Plaintiffs held a copyright.

Undisputed facts in the summary judgment record do show that, beginning at least as early as 2009, Archie's offered live music without first purchasing a license from Broadcast Music.  See Pls.' Facts ¶ 7.  The record also shows that live music performances continue at the Defendants' establishment and that Defendants have not purchased a license from Broadcast Music.  Id. ¶ 17.  But it is not enough to show that Defendants played live music despite not having a license from Broadcast Music.  To sustain liability for infringement, Plaintiffs would also have to show that the musical works performed were works licensed by Broadcast Music or owned by the other Plaintiffs.  Plaintiffs have not done so.  In the absence of such a showing, the court will not consider the amount that Defendants allegedly would have paid in licensing fees for 2009, 2010, 2014, or 2015.[3]

The total amount in fees Broadcast Music would have charged Defendants from April 2011 to March 2013 is $2,914.30.  See Mullaney Decl. ¶ 16.  The court presumes that, if limited to this two-year period, Plaintiffs would still seek triple the amount of Broadcast Music's claimed licensing fees, or approximately $9,000.  In support of their motion for summary judgment, however, Plaintiffs explain that purchase of a blanket license agreement "permit[s]

---

[3] Although no act of infringement occurred in 2012, Plaintiffs present evidence that their yearly licensing agreement would have run from April 1 through March 31 of each year.  See Mullaney Decl. ¶ 17. Accordingly, the infringing acts occurred during the licensing periods of April 1, 2011 – March 31, 2012 and April 1, 2012 – March 31, 2013.

music users to perform any of . . . over 8.5 million musical compositions." Lloyd Decl. ¶ 5. Accordingly, if Defendants had purchased two years of licenses from Broadcast Music for $2,914.30, they would have been able to publicly perform millions of songs countless times. It does not necessarily follow that a reasonable and just award for the public performance of three songs, one time each, would be $9,000.

The court recognizes that Plaintiffs' business model is a cost-effective method of licensing musical works and that it provides advantages to both copyright owners and those seeking to publicly perform their works. See Broadcast Music, Inc. v. Columbia Broad. Sys, Inc., 441 U.S. 1, 20-22 (1979) (discussing why blanket licensing arose and the value of the approach). Nonetheless, the court's task is to craft a damages award that properly vindicates the act of infringement proven in the summary judgment record. In completing this task, the court is not bound by Broadcast Music's pricing model and need not necessarily accept Broadcast Music's licensing fee as its baseline. This is particularly so where, as here, the summary judgment record evidences three discrete acts of infringement by individual performers, not a pattern or practice of allowing the regular public performance of copyrighted works over the two-year period for which the license would have been in operation.[4]

It is within the court's discretion to craft an award that it believes is just and reasonable in light of the evidence in the summary judgment record. Here, given the limited nature and scope of the proven infringement, the court concludes that a minimum statutory award of $750 per infringement, for a total statutory award of $2,250, is sufficient to address Defendants' proven

---

[4] The court offers no opinion on the likelihood that infringing acts occurred on other nights during this this two-year period. Without evidence in the summary judgment record to show infringement or non-infringement on the other nights, the court will not base its calculation of a statutory fee award on Plaintiffs' supposition.

wrongful acts and deter would-be infringers.[5]

B.     *Attorney's Fees*

Under the Copyright Act, "the court may . . . award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505; Spooner v. EEN, Inc., 644 F.3d 62, 69 (1st Cir. 2011).  For claims under the Copyright Act "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."  Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994).

In determining whether a party's requested attorney's fees are reasonable, courts use the lodestar method, which requires the court to determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  In calculating the lodestar, the court may properly "segregate time spent on certain unsuccessful claims, eliminate excessive or unproductive hours, and assign more realistic rates to time spent."  Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997).

The party seeking an award of fees bears the burden of proving the reasonableness of its fee request through submission of appropriate evidence.  See Hensley, 461 U.S. at 433.  In this case, Plaintiffs' counsel filed a declaration stating that he charged Plaintiffs $9,000 in attorney's fees for this case at a rate of $400 per hour.  See Supp. Decl. William S. Strong ¶ 1 [#25-1] [hereinafter Supp. Strong Decl.].  The court will allow counsel's requested hourly rate of $400.  As to the hours worked, however, the court finds Plaintiffs' litigation strategy unreasonable.

---

[5] When this statutory award is combined with the award of costs and fees, Defendants will pay more than double what they would have paid to Broadcast Music in licensing fees for the two-year period in question.  Accordingly, even adopting Broadcast Music's use of its licensing fees as a baseline for calculating damages, appropriate deterrence of would-be infringers has been achieved.  See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994) (allowing courts to consider deterrence when calculating an award of attorney's fees).

Defendant PJML never filed an answer or notice of appearance by counsel. Nonetheless, Plaintiffs did not seek a default judgment. Instead, Plaintiffs prepared discovery. After serving discovery and receiving no response from either Defendant, Plaintiffs could have concluded that Defendants did not seek to defend against the action and then moved for default under Fed. R. Civ. P. 37 (d)(1)(A)(ii) and 37(b)(2)(A)(vi). They did not do so. Plaintiff's counsel also did not comply with Local Rule 7.1 before filing this summary judgment motion. Had counsel done so, he may have confirmed that Lovett, the only Defendant with an appearance in this action, would not oppose the entry of judgment. Had these steps been taken, this case could have been resolved more efficiently and without the need for summary judgment briefing. For this reason, the court will exclude from its fee award the 7.6 hours of work completed after July 2014. See Supp. Strong Decl. at Ex A. The lodestar amount in this case is $5,960.

"Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances." Lipsett, 975 F.2d at 937 (citing Blum v. Stenson, 465 U.S. 886, 897 (1984)). The Supreme Court has eschewed a "precise rule or formula" for modification to the lodestar amount in favor of the district court's use of its "equitable discretion" as guided by certain illustrative factors. Fogerty, 510 U.S. at 534 & n.19 (citing Hensley, 461 U.S. at 436-37). In Broadcast Music, Inc. v. C.B.G., Inc., No. 11-cv-40142-FDS, 2014 WL 4656879 (D. Mass. Sept. 12, 2014), in which Broadcast Music was represented by the same counsel, another judge of this court considered the non-exhaustive factors in Fogerty as well as "the basic, uncomplicated nature of the controversy, the relative lack of serious factual dispute, [and] the novel, but easily refuted defense." 2014 WL 4656879 at *1, *7 (citing Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986)). In light of these considerations, the court in C.B.G. reduced Plaintiffs' requested attorney's fee award by 65%.

9

Id. at *7. Here, the allegations of the complaint are similarly straightforward, there was no serious factual dispute, the controversy was uncomplicated, and Defendants offered no defense. For these reasons, the court finds that a 25% reduction of the lodestar is warranted. Accordingly, Plaintiffs are awarded $4,470 in attorney's fees.

    C.    *Costs*

The Copyright Act allows a court, in its discretion, to grant an award of full costs to a prevailing party. 17 U.S.C. § 505. Plaintiffs request $544.50 in costs incurred by counsel, which they state is for filing fees, process server fees, and postage. See Supp. Strong Decl. ¶ 5. Plaintiffs further seek $680.32 in costs incurred by Broadcast Music during the pre-suit investigation of Archie's. See Strong Decl. ¶ 5. Plaintiffs provide no authority for the proposition that the court may shift to Defendants the cost of Plaintiffs' investigation that occurred prior to the commencement of this litigation. The court in its discretion awards only $544.50 in costs.

    D.    *Injunctive Relief*

Injunctive relief may be awarded "where (1) the plaintiff has prevailed on the merits, (2) the plaintiff would suffer irreparable injury in the absence of injunctive relief, (3) the harm to the plaintiff would outweigh the harm to the defendants from an injunction, and (4) the injunction would not adversely affect the public interest." Joyce v. Town of Dennis, 720 F.3d 12, 25 (1st Cir. 2013). "To be entitled to a forward-looking remedy, a plaintiff must satisfy the basic requisites of equitable relief—'the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004) (quoting O'Shea v. Littleton, 414 U.S. 488, 502 (1974)). This requires a showing "either that some past unlawful conduct has continuing impact . . . , or else . . . a likelihood of future

10

unlawful conduct on the defendant's part." Lopez v. Garriga, 917 F.2d 63, 67 (1st Cir. 1990) (internal citations omitted).

Plaintiffs have failed to make such a showing here.  There is no record evidence that Defendants continue to infringe or are likely to infringe in the future the works in which Broadcast Music and the other Plaintiffs have a copyright interest.  Although the court deems admitted the fact that live music continues to be performed at Defendants' establishment, see Pls.' Facts ¶ 14, nothing in the summary judgment record indicates that these live performances are of musical works for which a license from Broadcast Music is required to perform publicly. Accordingly, the court denies the request for a permanent injunction in this case.

VI.     Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment [#16] is ALLOWED IN PART.  Judgment is granted on all three counts of Plaintiffs' complaint.  The court denies in part Plaintiff's request for relief and awards $2,250 in statutory damages plus costs and attorney's fees in the amount of $5,014.50.

IT IS SO ORDERED.

September 30, 2015                                        /s/ Indira Talwani
                                                          United States District Judge